UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20-CR- |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. § 371 (Conspiracy) |
| ERIC SCHNEIDER | : | 18 U.S.C. § 1503 (Obstruction of Justice) |
| Defendant. | : | |

The United States Attorney charges that:

## INFORMATION

At times material to this Information:

## BACKGROUND

1. Communications Resource, Inc. ("CRI") was a Delaware corporation that is headquartered in McLean, Virginia.

2. ERIC SCHNEIDER (the "Defendant") was a Vice President and Chief Operating Officer ("COO") of CRI. SCHNEIDER owns 49% of CRI.

3. Person A was the Chief Financial Officer ("CFO") of CRI.

4. Person B was the Director of CRI's Business Solutions Group ("BSG"). Person B is also a Program Manager responsible for managing CRI's contracts with the U.S. Department of Agriculture ("USDA").

5. Person C was the Corporate Contracts Administrator for CRI.

6. CRI partnered with Insight Systems Corporation ("Insight") to create STARS II Partnership Joint Venture (dba "SightComm"). SightComm was a Small Business Administration ("SBA") 8(a) company.

7. The U.S. Department of Agriculture ("USDA") Office of Homeland Security and Emergency Coordination ("OHSEC") Physical Security Division ("PSD") was responsible for the protection of all USDA facilities, personnel and assets located outside the National Capital Region.

8. USDA OFFICIAL A was the Chief of the PSD.

9. USDA OFFICIAL B was a Program Manager in PSD.

10. USDA OFFICIAL C was the Deputy Chief of the PSD.

11. Homeland Security Presidential Directive 12 ("HSPD-12") required all federal agencies to develop and implement a secure and reliable identification for Federal employees and contractors.

12. The PSD was responsible for implementing and managing USDA's HSPD-12 credentialing program, which it did through several contracts awarded to CRI and SightComm. These responsibilities included preparing Statements of Work ("SOWs") for contracts and Independent Government Cost Estimates ("IGCEs")—the government's best estimate of the costs associated with a contract.

13. On or about February 24, 2014, SightComm was awarded USDA Contract No. GS-06F-12-38Z, Task Order No. GSQ0514BM0046 ("2014 HSPD-12 Contract"). The 2014 HSPD-12 Contract was to provide Homeland Security Presidential Directive 12 ("HSPD-12") services to USDA. The total value of the contract was approximately $2,676,559.

14. On or about December 16, 2014, SightComm was awarded Health & Human Services ("HHS") Contract No. GS-06-F-12-38Z, Task Order No. HHSP233201500014W ("2015 HSPD-12 Contract"). The 2015 HSPD-12 Contract was to provide HSPD-12 services to USDA. The total value of the contract was approximately $3,286,065.

15. On or about January 4, 2016, CRI was awarded HHS Contract No. HHSP233201600012B, Task Order No. HHSP23337002 ("2016 HSPD-12 Contract"). The 2016 HSPD-12 Contract was to provide HSPD-12 services to USDA. The 2016 HSPD-12 Contract included a base year plus four option years. The total value of the contract was approximately $7,331,828.

16. The PSD was also responsible for managing a Blanket Purchase Agreement ("BPA") for Physical Security Support Services.

17. Six companies were awarded contracts under the Physical Security Support Services BPA, including SightComm.

18. The total value of the Physical Support Services BPA Contract for SightComm was approximately $6,178,081.

## COUNT ONE
### 18 U.S.C. § 371
### (Conspiracy to Violate the Procurement Integrity Act)

19. The allegations set forth in Paragraphs 1 through 18 of this Information are incorporated herein by reference as if stated in full.

### The Conspiracy and Its Objects

20. From in or about July 2013, and continuing until on or about December 5, 2015, in the District of Columbia and elsewhere, the defendant,

**ERIC SCHNEIDER,**

and his coconspirators, USDA OFFICIAL A, USDA OFFICIAL B, and USDA OFFICIAL C (the "USDA Officials"), did knowingly combine, conspire, confederate, and agree with each other to commit an offense against the United States, that being: to knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a

3

Federal agency procurement contract to which the information related, for anything of value and to obtain and give SCHNEIDER a competitive advantage in the award of Federal agency procurement contracts.

### Purpose of the Conspiracy

21. A purpose of the conspiracy was for SCHNEIDER and the USDA Officials to leverage the USDA Officials positions of trust within USDA to give SCHNEIDER'S companies a competitive advantage in Federal procurement contracts for HSPD-12 services.

### Manner and Means of the Conspiracy

22. To hide their illicit relationship, SCHNEIDER and the USDA Officials communicated about their scheme using personal email addresses, not government-issued email addresses.

23. SCHNEIDER drafted and had his employees draft SOWs and IGCEs and manipulated the underlying requirements to favor CRI and SightComm.

24. SCHNEIDER gave the fixed SOWs and IGCEs to the USDA Officials through USDA OFFICIAL B, who used them to help award procurement contracts to CRI and SightComm.

25. To hide SCHNEIDER and his company's role in preparing SOWs and IGCEs, SCHNEIDER instructed the USDA Officials to delete metadata from those documents.

26. The USDA Officials, through USDA OFFICIAL B, secretly disclosed to SCHNEIDER competitor cost proposals, in violation of procurement integrity rules, to advantage CRI and SightComm.

27. SCHNEIDER had his employees use a government username and password for a GSA website, provided to him by USDA OFFICIAL B, to approve CRI and SightComm invoices to USDA.

28. SCHNEIDER gave things of value to the USDA Officials and other USDA employees to influence their decision to give CRI and SightComm a competitive advantage, including but not limited to paying for: Corvette wheels, concert tickets, concierge medical services, PGA tour tickets, meals, alcohol, strip clubs, parking, concierge medical services, prescription drugs, and related cash tips.

### Overt Acts

29. In furtherance of the conspiracy, and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Columbia, and elsewhere:

30. On or about November 30, 2015, USDA OFFICIAL A sent an email from his personal email account to SCHNEIDER, writing: "Eric, Thoughts about keeping this service?" Attached to the email was an invoice in the amount of $1,800 for "Nu-Living Personal Physical Medical Service Renewal"—a medical concierge service—for USDA OFFICIAL A.

31. On the same date, SCHNEIDER forwarded the email and invoice to Person A, and wrote: "Can I get u to pay This against hspd12 Hhs Corp holdback please."

32. On or about December 3, 2015, SightComm wrote a check, payable to "NuLiving Optimal Wellness," in the amount of $1,800.

**(Conspiracy to Violate the Procurement Integrity Act, in violation of 18 U.S.C. § 371)**

### COUNT TWO
### 18 U.S.C. § 1503
### (Obstruction of Justice)

33. The allegations set forth in Paragraphs 1 through 18 of this Information are incorporated herein by reference as if stated in full.

5

34. On or about November 9, 2015, the USDA Office of Inspector General, Beltsville Field Office, which is responsible for investigations in the District of Columbia, began a criminal investigation arising from CRI and SightComm's Federal procurement contracts from USDA.

35. On or about July 18, 2016, the Federal Bureau of Investigation ("FBI"), Washington Field Office, began a criminal investigation arising from CRI and SightComm's Federal procurement contracts from USDA.

36. On or about March 7, 2016, a Federal Grand Jury empaneled by the United States District Court for the District of Columbia began an investigation arising from CRI and SightComm's Federal procurement contracts from USDA.

37. On or about September 28, 2016, CRI was served with a subpoena duces tecum issued by the Federal Grand Jury investigating CRI and SightComm's Federal procurement contracts from USDA. The subpoena specifically demanded production of, among other things:

   a. "All documents of any Competitor in the Company's possession, custody or control [.]"; and

   b. "Any and all communications (including email and any attached documents), including meetings and calendar invites, to and from CRI, Insight, and/or SightComm and any USDA employee."

38. Shortly after receiving the Grand Jury subpoena, SCHNEIDER instructed Person B and Person C to delete from their CRI email accounts certain documents responsive to the subpoena, including emails sent by USDA OFFICIAL B from his personal email address.

39. Person B told SCHNEIDER that Person B could not delete any email because of the existence of the Grand Jury subpoena. SCHNEIDER replied that Person B should not worry,

because he intended to dismantle CRI's email server, and then stood over Person B's shoulder while Person B deleted emails.

40.  On or about September 28, 2016, in the District of Columbia and elsewhere, the defendant,

**ERIC SCHNEIDER,**

did corruptly obstruct and impede or endeavor to obstruct and impede the due administration of justice in a Federal Grand Jury in the District of Columbia; that is—SCHNEIDER directed Person B and Person C to delete emails responsive to a Federal Grand Jury subpoena duces tecum to try and obstruct criminal investigations in the District of Columbia by the USDA-OIG, FBI, and Federal Grand Jury.

**(Obstruction of Justice, in violation of 18 U.S.C. § 1503)**

MICHAEL R. SHERWIN
Acting United States Attorney
for the District of Columbia

By: *[signature: Elizabeth Aloi]*

Elizabeth A. Aloi
Assistant United States Attorney
Public Corruption and Civil Rights Section
U.S. Attorney's Office for the District of Columbia